ANTHONY BARONE, on behalf of,     :
Himself and all others           :
Similarly situated               :
                                 :
     Plaintiff,                  :
                                 :
v.                               : Civil No. 3:17-CV-01545(VLB)
                                 :
LAZ PARKING LTD, LLC,            :
                                 :
     Defendant.                  :

## RULING DENYING DEFENDANT'S MOTION TO LIMIT NOTICE

The plaintiffs brought this action for unpaid wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. In June of 2018, the plaintiffs filed a motion for conditional certification. (Dkt. #49). After the parties fully briefed the issue, the Honorable Vanessa L. Bryant granted the motion for conditional certification, on June 28, 2019. The defendant now seeks an order excluding any individuals who have signed arbitration agreements from receiving notice of the conditionally certified collective. (Dkt. #79). The plaintiffs oppose the motion. Based on the briefs and the controlling law, the defendant's motion is **DENIED**.

## I. Timeliness and Waiver

Plaintiffs argue that the motion to exclude the individuals who signed arbitration agreements from receiving notice raises

1

an issue that could have and should have been raised while the parties were arguing over conditional certification. As a result, the plaintiffs argue that the defendant has waived the issue. The plaintiffs also argue that the motion is an improper and untimely motion for reconsideration. In response, the defendant argues that the "Court never addressed the arbitration issue. In other words, there is nothing for this Court to reconsider." (Dkt. #82, at 16). The defendant also argues that there is no procedural rule that required the defendant to raise the arbitration agreements in its opposition to the motion for conditional certification. (Dkt. #82, at 15).

By way of relevant background, the plaintiffs filed their motion for conditional certification in June of 2018. In connection with the motion, the parties filed a total of six briefs, focusing primarily on whether the plaintiffs are "similarly situated." (Dkt. #50, 51, 52, 54, 55 and 57). On February 11, 2019, this Court issued a ruling which granted the motion for conditional certification. (Dkt. #58).

On March 5, 2019, the defendant objected to the ruling and requested review by the Honorable Vanessa L. Bryant. (Dkt. #62). Thereafter, both parties submitted briefs. (Dkt. #64-66). On June 28, 2019, the Honorable Vanessa L. Bryant overruled the defendant's objection and granted conditional certification of the FLSA class. (Dkt. #70).

On August 9, 2019, the defendant filed a motion to exclude any individuals who signed arbitration agreements from receiving notice of the conditionally certified collective. (Dkt. #79). In its motion, the defendant relies on In re: JPMorgan Chase & Co., 916 F.3d 494 (5th Cir. 2019), in which the Fifth Circuit Court of Appeals excluded employees who signed arbitration agreements from receiving notice of the conditionally certified collective. *Id.* at 497. Although JPMorgan was decided before the defendant briefed its objection to the Court's ruling (Dkt. #62), neither party mentioned JPMorgan or the arbitration agreements in their briefs. (Dkt. #64, 65 and 66). Thus, the arbitration issue was never before the court. As a result, the Court concludes that the pending motion is not a motion for reconsideration.

The next question is whether the defendant was required to raise the arbitration agreements while opposing the motion for conditional certification. The issue raised in JPMorgan is not new. As the defendant states in its brief,

> the reasoning of JP Morgan is not new. This Court need not look past Hoffman-La Roche[v. Sperling, 493 U.S. 165 (1989)] to come to the same conclusion as the Fifth Circuit did in JPMorgan.

(Dkt. #79 at 9). The plaintiff argues that this statement is an acknowledgement by the defendant that it could have and should have raised the arbitration agreements earlier, such

that the failure to do so constitutes a waiver of the issue. (Dkt. #80, 9-10). The Court concludes that the defendant was not required to raise the arbitration agreements earlier. Indeed, many of the cases cited by the plaintiffs hold that the determination of whether an arbitration agreement is enforceable is best left for step two of the certification process, as opposed to step one. (Dkt. #80, at 11-13). Since the defendant did not waive its right to raise the arbitration agreements, the Court will address the merits of the motion.

For the reasons discussed below, the Court **DENIES** the motion to exclude the individuals who have signed arbitration agreements from receiving notice. However, nothing in this ruling will prohibit the defendant from raising the issue in a motion to compel arbitration or at the second stage of the certification process.

II.  <u>Potential exclusion of individuals who signed arbitration agreements at the conditional certification stage</u>

The defendant asks the Court to exclude any individuals who signed arbitration agreements from receiving notice of the collective action. In making its argument, the defendant relies on the Fifth Circuit's decision in <u>In re: JPMorgan Chase & Co.</u>, 916 F.3d 494 (5th Cir. 2019).

In <u>JPMorgan</u>, the district court granted a motion for conditional class certification in an FLSA case. Thereafter,

the defendant sought a writ of mandamus to direct the court to exclude any employees who signed arbitration agreements from receiving notice.  The Fifth Circuit excluded such individuals from receiving notice. *Id.* at 497 ("we hold that district courts may not send notice to an employee with a <u>valid</u> arbitration agreement unless the record shows that nothing in the agreement would prohibit that employee from participating in the collective action.")(Emphasis added).

Defendant LAZ Parking notes that the Fifth Circuit's decision "is the first circuit court decision to interpret the text of the FLSA and <u>Hoffman-LaRoche</u> in the context of whether those with arbitration agreements should receive notice." (Dkt. #79, at 12).  The defendant argues that if the court allows individuals who signed arbitration agreements to receive notice of the collective action, the court would be treating their arbitration "agreements as presumptively unenforceable." (Dkt. #79, at 5).  The defendant argues that by seeking to provide notice to the individuals who signed arbitration agreements, the plaintiffs are attempting to "stir up litigation and unjustifiably double the size of the collective" even though the Supreme Court supposedly prohibited such tactics in <u>Hoffman-La Roche v. Sperling</u>, 493 U.S. 165 (1989). (Dkt. #79, at 6).  Since the defendant repeats this argument multiple times, (Dkt. #79, at 5, 6 and 14), it should be noted that the majority opinion in

<u>Hoffman-La Roche</u> did not actually raise the concern about stirring up litigation.[1]  The concern was raised by the dissenting opinion.  In any event, courts have generally rejected the notion that sending notice to individuals with arbitration agreements stirs up litigation.  <u>Garcia v. Chipotle Mexican Grill, Inc.</u>, No. 16 Civ. 601 (ER), 2019 WL 358503, at *3-4 (S.D.N.Y. Jan. 29, 2019).

Relying largely on cases that pre-date <u>JPMorgan</u>, the plaintiffs argue that courts within the Second Circuit have

---

[1] As the Honorable Patti B. Saris correctly observed in <u>Romero v. Clean Harbors Surface Rentals USA, Inc</u>., 2019 WL 4280237, at *3 (D. Mass., Sept. 11. 2019),

> [i]n <u>JPMorgan</u>, the Fifth Circuit reasoned that giving notice to workers subject to arbitration agreements "who cannot ultimately participate in the collective 'merely stirs up litigation,' which is what <u>Hoffman-La Roche</u> flatly proscribes." 916 F.3d at 502 (citing Hoffmann-La Roche, 493 U.S. at 181, 110 S.Ct. 482 (Scalia, J., dissenting)). The Court observes, however, that the concern about stirring up litigation was expressed by the <u>Hoffman-La Roche</u> dissent, not the majority opinion. To the extent that the <u>Hoffman-La Roche</u> majority was concerned about trial courts engaging in "the solicitation of claims," it cautioned only that they "must be scrupulous to respect judicial neutrality" and "must take care to avoid even the appearance of judicial endorsement of the merits of the action." <u>Id.</u> at 174, 110 S.Ct. 482. Nowhere in the majority's opinion did it suggest that trial courts were required to make sure that the only workers receiving notice of an FLSA collective action were those actually capable of joining the action.

<i>Id</i>. at *3.

consistently refused to exclude plaintiffs from receiving notice simply because they have signed arbitration agreements. See Gathmann-Landini v. Lululemon USA, Inc., No. 15-cv-6867, 2018 WL 3848922, at *1 n.2 (E.D.N.Y. Aug. 13, 2018); Castillo v. Perfume Worldwide Inc., No. 17-cv-2972 (JS)(AKT), 2018 WL 1581975, at *12 (E.D.N.Y. Mar. 30, 2018); Varghese v. JP Morgan Chase & Co., No. 14-cv-1718 (PGG), 2016 WL 4718413, at *8-9 (S.D.N.Y. Sept. 9, 2016); Morales v. Rochdale Village, Inc., 15 CV 502 (RJD)(RML), 2016 WL 11190525, at *6 (E.D.N.Y. Aug. 15, 2016); Racey v. Jay-Jay Cabaret, Inc., No. 15-cv-8228 (KPF), 2016 WL 3020933, at *5 (S.D.N.Y. May 23, 2016); Guzman v. Three Amigos SJL Inc., 117 F. Supp. 3d 516, 526 (S.D.N.Y. 2015)(since the defendants had not moved to compel arbitration for any of the named plaintiffs, the court found that the "validity of the arbitration clause defense is speculative at this stage."); Romero v. La Revise Assocs., L.L.C., 968 F. Supp. 2d 639, 647 (S.D.N.Y. 2013)("case law makes clear that this sort of merits-based determination should not take place at the first stage of the conditional collective action approval process."); Hernandez v. Immortal Rise, Inc., No. 11-cv-4360 (RRM)(LB), 2012 WL 4369746, at *5 (E.D.N.Y. Sept. 24, 2012); D'Antuono v. C & G of

Groton, Inc., No. 3:11-cv-33 (MRK), 2011 WL 5878045 (D. Conn. Nov. 23, 2011).[2]

The Court agrees with the plaintiffs that the weight of authority within the Second Circuit militates against adopting the Fifth Circuit's approach.  As the court observed in Gathmann-Landini, 2018 WL 3848922, at *1 n.2 (E.D.N.Y. Aug. 13, 2018), "[c]ourts in this circuit have consistently moved forward with the first step of FLSA collective actions to determine if plaintiffs are similarly situated, without regard to arbitration agreements made by the plaintiffs."

---

[2] The defendant argues that most of the cases plaintiffs cite predate the United States Supreme Court's ruling in Epic Systems Corp. v. Lewis, 138 S. Ct. 1612 (2018). (Dkt. #82 at 13). However, all of the cases that the defendant cites in support of excluding the "putative collective members" who signed arbitration agreements also predate Epic. (Dkt. #82 at 14). See Hudgins v. Total Quality Logistics, LLC, No. 16-cv-7331, 2017 WL 514191(N.D. Ill. Feb. 8, 2017); Fischer v. Kmart Corp., No. 13-cv-4116, 2014 WL 3817368 (D.N.J. Aug. 4, 2014); Daugherty v. Encana Oil & Gas (USA), Inc., 838 F. Supp. 2d 1127 (D. Colo. 2011); Morangelli v. Chemed Corp., No. 10-cv-876 (BMC), 2010 WL 11622886 (E.D.N.Y. Jun. 15, 2010).  In any event, as one district court within the Second Circuit has observed, "dicta in this district and recent decisions in others contemplate that the Court's holding [in Epic] will have little effect on the approach of permitting a broad class of similarly situated individuals to receive notice of a collective action even if some may be compelled to arbitrate their claims should they decide to opt in." Lijun Geng v. Shu Han Ju Rest. II Corp., No. 18 CV 12220 (PAE)(RWL), 2019 WL 4493429, at *8 (S.D.N.Y. Sept. 9, 2019); see also Thomas v. Papa John's Int'l, Inc., No. 1:17 CV 411, 2019 WL 4743637, at *4 n.1 (S.D. Ohio Sept. 29, 2019).

The defendant relies upon Lanqing Lin v. Everyday Beauty Amore, Inc., No. 18-cv-729 (BMC), 2018 WL 6492741 (E.D.N.Y. Dec. 10, 2018), a 2018 case within the Second Circuit in which a district court decided to exclude plaintiffs who had signed arbitration agreements. In Lanqing Lin, the plaintiffs argued that "employees cannot waive their FLSA rights by contract" and that the question of whether the arbitration agreements are valid and enforceable should be determined at the second step of the certification process. *Id.* at *4. The court stated

> [a]lthough plaintiffs are technically correct that the first step considers only whether other employees are similarly situated as to the existence and application of a common practice or policy – as compared to their ability to recover on the merits or their means to do so – this nuance cannot save them here. Indeed, every case plaintiffs cite in support of this position predates Sutherland [v. Ernst & Young LLP, 726 F.3d 290 (2d Cir. 2013)], which eliminates any persuasive effect they may have otherwise had.

*Id.*

Although the Court accepts Lanqing Lin as persuasive authority, there are critical differences between Lanqing Lin and the instant case. First, in reaching its conclusion, the court in Lanqing Lin noted that all of the cases cited by the plaintiffs predated Sutherland v. Ernst & Young LLP, 726 F.3d 290 (2d Cir. 2013)(holding that an employee's ability to proceed collectively under the FLSA can be waived in an arbitration agreement). In contrast, in the instant case, almost all of the

cases that the plaintiffs cite in support of their argument that the arbitration agreements should be addressed later and should not preclude individuals from receiving notice were decided after Sutherland. *See e.g.*, Gathmann-Landini, 2018 WL 3848922 (E.D.N.Y. Aug. 13, 2018); Castillo, 2018 WL 1581975 (E.D.N.Y. Mar. 30, 2018); Varghese, 2016 WL 4718413 (S.D.N.Y. Sept. 9, 2016); Racey, 2016 WL 3020933 (S.D.N.Y. May 23, 2016).

Additionally, the underlying facts in the instant case are different than the facts in Lanqing Lin. In Lanqing Lin, all of the employees worked in New York, such that the validity of their arbitration agreements would be determined by New York law. In the instant case, the members of the collective action work in 30 different states, thereby requiring the court to apply each state's law in order to determine the validity of each arbitration agreement. See Abdullayeva v. Attending Homecare Servc. LLC, 928 F.3d 218, 222 (2d Cir. 2019). In Lanqing Lin, the arbitration agreements were part of the record. Lanqing Lin, 2018 WL 6492741, at *5. In contrast, LAZ Parking has not submitted any signed arbitration agreements for any of the collective class members. LAZ Parking has only submitted a sworn declaration from its VP of People and Culture which "estimates" that "approximately 200" assistant managers have signed arbitration agreements with class action waivers. (Dkt. #79-1, at ¶4). The record does not indicate which members of

10

the collective supposedly signed arbitration agreements or when they signed them. The record also does not identify any of the facts or circumstances surrounding the formation of the contracts or the state in which each individual resides. Thus, LAZ Parking's reliance on Lanqing Lin is misplaced.

Several district courts have addressed JPMorgan. Within the Second Circuit, at least one district court has refused to follow JPMorgan. See Lijun Geng v. Shu Han Ju Rest. II Corp., No. 18 CV 12220 (PAE)(RWL), 2019 WL 4493429, at *9 (S.D.N.Y. Sept. 9, 2019)("[t]his court believes it appropriate in this case to follow the greater weight of authority endorsing sending notice of a collective action to potential opt-ins who may be party to an arbitration agreement.").

Outside of the Second Circuit, a number of district courts have also refused to follow JPMorgan. Those courts generally conclude that the enforceability of the arbitration agreements should not be determined at stage one of the conditional certification process. Monplaisir v. Integrated Tech Group, LLC, No. C 19-1484 WHA, 2019 WL 3577162, at *3 (N.D. CA., Aug. 6, 2019)("[a]t this stage, all putative collective members remain potential plaintiffs. Thus, to avoid putting the cart before the horse, this inquiry is best left for step two."); Gonzalez v. Diamond Resorts Int'l Mktg., No. 2:18-cv-00979 (APG)(CWH), 2019 WL 3430770, at *5 (D. Nev. July 29, 2019)

("Withholding notice because of the existence of an arbitration agreement presupposes the enforceability of the agreement. . . . [T]he existence of an arbitration agreement goes to an aspect of defendant's defense, and the enforceability of such an agreement is better reserved for stage two."); Bigger v. Facebook, Inc., *appeal filed*, 375 F. Supp. 3d 1007, 1023 (N.D. Ill. March 22, 2019) ("[T]he enforceability of arbitration contracts must be adjudicated on the merits, and the Court does not make merits determinations at the conditional certification stage.") (internal citations and quotations omitted).[3] *See also* Clark v. Pizza Baker, Inc., No. 2:18-CV-157, 2019 WL 4601930, at *7 (S.D. Ohio Sept. 23, 2019)("This Court is more persuaded as to the merits of the approach taken in Bigger v. Facebook than that taken in In re JPMorgan Chase & Co., at least when ruling on a Motion to Strike or Stay and finds that Taylor [v. Pilot Corp., 697 Fed. Appx. 854, 861 n. 3 (6th Cir. 2017)] suggests that the Sixth Circuit would be disinclined to follow the Fifth Circuit's approach.").

Some district courts in other jurisdictions have decided to follow and apply JPMorgan. *See* Compere v. Nusret Miami, LLC, 391

---

[3]As the defendant notes, Bigger has been appealed to the Seventh Circuit Court of Appeals. However, the decision still remains persuasive authority. The Second Circuit has yet to consider JPMorgan, so all of the cases from other jurisdictions, either following or rejecting JPMorgan, serve as persuasive authority.

F. Supp. 3d 1197, 1205 (S.D. Fla. 2019)("[T]he parties shall also consider the list of individuals to be noticed in light of defendants' contention that many employees have signed arbitration agreements and thus should not receive notice of this action."); McGuire v. Intelident Sols., LLC, 385 F. Supp. 3d. 1261, 1266 (M.D. Fla. July 17, 2019)(where plaintiff did not contest the validity or enforceability of any arbitration agreement, the court held that "OMs who may be subject to a valid arbitration agreement should be excluded from this collective action at this notice stage."); Lea Graham v. Word Enterprises Perry, LLC, No. 18-CV-10167, 2019 WL 2959169, at *5 (E.D. Mich. June 18, 2019)("this court concludes that the 100 employees who are bound to arbitrate may not receive notice of conditional certification if this Court grants it."); Mode v. S-L Distribution Co., LLC, No. 318CV00150RJCDSC, 2019 WL 1232855, at *4 n. 3 (W.D.N.C. Mar. 15, 2019)(describing its decision as being consistent with the Fifth Circuit's ruling in JPMorgan, the court stated that "when the court has yet to determine whether plaintiffs are employees or whether the Distributor Agreements will be upheld, it would be improper to preclude sending notice to those potential plaintiffs whose Distributor Agreements contained arbitration provisions.").  However, these decisions appear inconsistent with the approach taken by most of the district courts within the Second Circuit.

The defendant argues that if this Court denies the motion to exclude the individuals who signed arbitration agreements, it would effectively amount to a waiver of the defendant's right to arbitrate. (Dkt. #82 at 4, 6-10). The Court disagrees. The defendant repeatedly relies on the Supreme Court's decision in Epic Systems Corp. v. Lewis, 138 S. Ct. 1612 (2018). In Epic, the Supreme Court found that arbitration agreements that contain waivers of the right to participate in class or collective actions are lawful and enforceable. Id. Epic will be informative if the defendant files its motions to compel arbitration or when the parties reach the second stage of the certification process. However, at this moment, the Court lacks sufficient information to determine the validity of the arbitration agreements.[4] The defendant is essentially asking the Court to validate the arbitration agreements, which supposedly have been signed by approximately 200 potential notice recipients across 30 states, without identifying those employees

---

[4] See Garcia v. Chipotle Mexican Grill, Inc., No. 16 CIV. 601 (ER), 2019 WL 358503, at *4 n. 2 (S.D.N.Y. Jan. 29, 2019) ("[E]ven after Epic, there still will be factual issues concerning the existence of opt-ins' arbitration agreements or their invalidity under "generally applicable contract defenses, such as fraud, duress, or unconscionability." [Epic Systems] at [138 S. Ct.] 1622 (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)). Such factual issues concerning opt-ins' arbitration agreements are properly deferred until after the initial stage of certification.").

14

or providing a copy of the agreements that the employees signed or disclosing any of the facts or circumstances surrounding the manner in which each agreement was formed. (Dkt. #79 at 11). This Court declines to do so at this stage where a motion to compel arbitration has not even been filed.

The defendant also argues that (1) federal policy protects arbitration agreements, (2) providing notice to those with arbitration agreements is an impermissible "solicitation of claims," and (3) requiring notice to be sent would "deprive LAZ of the benefits of arbitration." (Dkt. #79 at 6-10). These arguments have been rejected by courts within the Second Circuit, as evident by the repeated authorization of notice to those with arbitration agreements. *See, e.g.* D'Antuono, 2011 WL 5878045, at *4 ("That the applicability of the arbitration agreements will need to be determined individually should not prevent class certification."); Compare Agarunova v. Stella Orton Home Care Agency, Inc., No. 16-cv-638 (MKB), 2019 WL 1114897, at *3 (E.D.N.Y. Mar. 11, 2019) (denying motion for conditional certification without prejudice where a pending motion to compel arbitration preceded the motion for conditional certification and every potential plaintiff was subject to the arbitration provision). Accordingly, "the interest of judicial economy and, perhaps more importantly, of ensuring that all eligible workers receive notice outweigh the possible negative

effect that some receiving the notice might not have valid claims." Walston v. Edward J. Young, Inc., No. 15-cv-457 (LDW)(AYS), 2016 WL 3906522, at *7 (E.D.N.Y. Feb. 22, 2016).

Since the weight of authority within the Second Circuit is inconsistent with the approach that was taken by the Fifth Circuit in JPMorgan, the Court denies LAZ Parking's motion.[5] "As the Second Circuit has made clear, the FLSA is a remedial statute, and the federal courts should give it a liberal construction." Aros v. United Rentals, Inc., 269 F.R.D. 176, 182 (D. Conn. 2010)(Hall, J.). One purpose of the FLSA notice requirement is "to start a conversation among employees, so as to ensure that they are notified about potential violations of the FLSA and meaningfully able to vindicate their statutory rights." Lijun Geng, 2019 WL 4493429, at *20 (S.D.N.Y. Sept. 9, 2019)(quoting Trinidad v. Pret A Manger (USA) Ltd., 962 F. Supp. 2d 545, 564 (S.D.N.Y. July 11, 2013)); Bittencourt v. Ferrara Bakery and Café, Inc., 15 CV 0499 (JPO)(JCF), 310 F.R.D. 106,

_____

[5] Additionally, this case is unaffected by the Second Circuit's decision in Abdullayeva as there was a pending motion to compel arbitration in that case which the district court denied. 928 F.3d 218 (2d Cir. 2019). The Second Circuit reversed that denial. Id. Here, the Court is not in a proper procedural position to compel arbitration based on an arbitration agreement that has not been filed or litigated. Abdullayeva will likely be instructive if a motion to compel is filed but is not instructive regarding notice of conditional certification.

118 (S.D.N.Y. Sept. 25, 2015).[6]  See also <u>Oakley v. Servisair,</u>

<u>LLC</u>, No. 13 CV 4191 (EN)(VPK), 2017 WL 3017719, at *2 (E.D.N.Y.

July 14, 2017). That purpose would be undermined if employees

who have signed arbitration agreements are excluded from

receiving notice.  Excluding such employees from receiving

notice would presuppose that the arbitration agreements are

valid, even though the employees who signed the agreements may

very well have a legitimate challenge to their validity or

enforceability.  Excluding such employees from receiving notice

could foreclose their opportunity to challenge the agreements or

to attempt to vindicate their rights, whether in court or

arbitration.

   III. <u>LAZ Parking has not shown the existence of valid</u>
        <u>arbitration agreements by a preponderance of the evidence</u>

    Had the Court applied <u>JPMorgan</u>, the defendant's motion

still would have been denied.  In <u>JPMorgan</u>, there was no dispute

regarding the existence or enforceability of the arbitration

agreements.  The Fifth Circuit specifically stated that "if

there is a genuine dispute as to the existence or validity of an

---

[6]Thus, for example, some district courts within the Second
Circuit have allowed plaintiffs to obtain contact information
for potential class members "even if some recipients of the
notice will have claims that are time-barred under the FLSA."
<u>Moore v. Eagle Sanitation, Inc.</u>, 276 F.R.D. 54, 59 (E.D.N.Y.
July 18, 2011)(quoting <u>Cano v. Four M Food Corp.</u>, No. 08-CV-
3005, 2009 WL 5710143, at *10 (E.D.N.Y. Feb. 3, 2009). But see
<u>Ramos v. Platt</u>, 1:13 CV 8957 (GHW), 2014 WL 3639194 (S.D.N.Y.
July 23, 2014)(reaching a contrary result).

arbitration agreement, an employer that seeks to avoid a collective action, as to a particular employee, has the burden to show, by a preponderance of the evidence, the existence of a _valid_ arbitration agreement for that employee." _JPMorgan_, 916 F.3d at 502-03 (emphasis added).

Unlike _JPMorgan_, it cannot be said that there is no dispute here concerning the existence and enforceability of the arbitration agreements. (Dkt. #83, at 8-15). Therefore, had the Court applied _JPMorgan_, LAZ Parking would have been required to show the existence of a valid arbitration agreement for each member it seeks to exclude. LAZ Parking has failed to produce sufficient evidence to meet its burden. LAZ Parking has submitted an unsigned and undated document entitled "Agreement to Arbitrate Employment Disputes,"(Dkt. #79-1), along with a sworn declaration from the V.P. of People and Culture, Eric Daigle, "estimat[ing]" that "approximately 200" assistant managers have signed arbitration agreements with class action waivers. (Dkt. #79-1, at ¶4). Mr. Daigle's declaration states that the class action waiver language is "the same or similar" to the language in the unsigned, undated agreement that is attached to his declaration. (Dkt. #79-1, at ¶5). As illustrated by the discussion below, the cases that have applied _JPMorgan_ have generally found such evidence to be insufficient.

In _Camp v. Bimbo Bakeries USA, Inc_., No. 18-cv-378-SM, 2019
WL 1472586 (D. NH. Apr. 3, 2019), after the court granted
conditional certification of an FLSA class, the defendant moved
for partial reconsideration.  In light of JPMorgan, the
defendant argued that it would be inappropriate to send notice
of the pending collective to individuals who were subject to
arbitration agreements.  _Id._ at *3.  In denying the motion for
reconsideration, the court observed that the parties in JPMorgan
did not dispute that approximately 85% of the potential members
of the collective were subject to binding arbitration agreements
and were thus precluded from participating in the collective
action. _Id._  The court stated that

> [g]iven the absence of any disagreement about the
> existence or enforceability of those arbitration
> agreements, it is not surprising that the court [in
> JPMorgan] held that "[w]here a preponderance of the
> evidence shows that the employee has entered into a valid
> arbitration agreement, it is error for a district court
> to order notice to be sent to that employee as part of
> any sort of certification." [JPMorgan, 916 F.3d] at 503.
> Here, however, the plaintiffs contest both the existence
> and enforceability of any arbitration agreements.

_Id._ The court noted that

> Bimbo Bakeries have not produced even a single executed
> arbitration agreement signed by a potential member of
> the collective. Instead, they have merely proffered an
> untethered "Exemplar Distribution agreement", which
> consists of a few isolated pages extracted from what
> Bimbo Bakeries says (in their memorandum, and not by way
> of affidavit) is a Distribution Agreement executed by
> "many" potential members of the collective.

*Id.* (internal citation omitted). The court in <u>Bimbo Bakeries</u> concluded that the defendant failed to meet its burden and, therefore, denied the requested relief.

In <u>Romero v. Clean Harbors Surface Rentals USA, Inc</u>., No. 18-10702-PBS, 2019 WL 4280237 (D. Mass., Sept. 11. 2019), the district court in Massachusetts granted plaintiff's motion to conditionally certify a collective action.  Relying upon <u>JPMorgan</u>, the defendant moved for clarification, requesting the court to expressly state that any members of the collective who signed arbitration agreements are not part of the group, "meaning they will not receive notice of the FLSA collective action nor will they be allowed to opt-in to the action." *Id.* at *1.  The court observed that

> [t]he Fifth Circuit recognized that workers could not be excluded from receiving notice of an FLSA collective action merely because they signed an arbitration agreement.  Instead, it required that district courts conduct a preliminary inquiry into the validity of the arbitration agreements at the conditional certification stage.

*Id.* at *3.

In support of its claim that the employees entered into valid arbitration agreements, the defendant in <u>Romero</u> produced three sample consulting agreements, a master service agreement ("MSA") which incorporated an arbitration agreement by reference, a sample arbitration agreement, and an affidavit from a Managing Director which stated that the samples of the MSA and

arbitration agreement are representative of those signed by
other workers.  The court found that such evidence was
insufficient to establish by a preponderance of the evidence
that the arbitration agreements for all 136 employees are valid.
*Id.* at *4.  The court stated that "[t]he problem is compounded
by the fact that [plaintiff] has no way of meaningfully
contesting the validity of the Arbitration Agreement since he
does not yet know the identity of any of the Arbitration Workers
or the circumstances in which they signed Arbitration
Agreements."  *Id.*  As a result, the court refused to exclude the
members of the collective from receiving notice of the
collective action. *Id.*[7]

In <u>Lanqing Lin</u>, 2018 WL 6492471, a case which pre-dates
<u>JPMorgan</u> but is cited by LAZ Parking, (Dkt. #79, at 6 and 15-
16), employees who were employed in New York signed arbitration
agreements as a condition of either new or continued employment.
*Id.* at *11.  The plaintiffs moved for conditional certification
and the defendant objected to the proposed scope of the
collective.  In resolving the issue, the court concluded that

---

[7] See also <u>Thomas v. Papa John's Int'l, Inc.</u>, No. 1:17CV411, 2019
WL 4743637, at *4 (S.D. Ohio Sept. 29, 2019)(finding
"insufficient facts in the record" regarding the validity of the
arbitration agreements, the Court permitted "notice to be sent
to those employees subject to an arbitration agreement with the
recognition that the agreements' enforceability will have to be
determined at a later stage in the litigation.").

the employees who signed arbitration agreements were not similarly situated to the named plaintiffs.[8]  *Id.* at *5.  In reaching that conclusion, the court specifically noted that "[t]he relevant record as to these employees is the arbitration agreement.  That record is before the Court now and there is no benefit obtained by waiting until step two to decide this issue."  *Id.*

Unlike Lanqing Lin, the arbitration agreements that were supposedly signed by the members of the collective in this case are not part of the record.  As in Bimbo Bakeries and Romero, LAZ Parking has not provided any of the arbitration agreements that were signed by the members of the collective.  Instead, LAZ Parking has submitted a one paged document that is entitled "Agreement to Arbitrate Employment Disputes."  (Dkt. #79-1).  The document is undated and unsigned. (Dkt. #79-1).  LAZ Parking has also submitted a sworn declaration from Eric Daigle which "estimates" that "approximately 200" assistant managers have signed arbitration agreements with class action waivers and asserts that the language of each such waiver is the same or similar to the unsigned, undated agreement that is attached to

---

[8] This Court has already decided the issue of whether the plaintiffs are similarly situated for conditional certification purposes and LAZ Parking has stated that it is not arguing that the individuals who signed arbitration agreements are not similarly situated. (Dkt. #82, at 5).

Mr. Daigle's declaration. (Dkt. #79-1, at ¶5). LAZ Parking never identifies which employees supposedly signed the arbitration agreements. As in Romero, this omission compounds the problem because the plaintiffs have "no way of meaningfully contesting the validity of the Arbitration Agreement since [they do] not yet know the identity of any of the Arbitration Workers or the circumstances in which they signed Arbitration Agreements." Romero, 2019 WL 4280237, at *4.

As the plaintiffs correctly note, LAZ Parking has not produced (1) any evidence showing how and when the arbitration agreements were presented to the members of the collective action, or (2) any evidence showing whether the agreements were provided to the members of the collective action before or after the lawsuit was filed or after the Court granted conditional certification,[9] or (3) any evidence regarding any other details relating to the formation of the arbitration agreements. (Dkt. #83, at 13). As a result, had the Court applied JPMorgan, it

---

[9] In Walsh v. Gilbert Enterprises, Inc., C.A. No. 15-472 WES, 2019 WL 2448670 (D. R.I., June 12, 2019), the district court distinguished JPMorgan, noting that the arbitration agreements in JP Morgan "applied to the entire collective action period, whereas the arbitration agreements at issue here only came into existence in February 2016 – nearly three years after the collective action period began in October 2013." *Id.* at *1. LAZ Parking has not submitted any evidence that would allow the Court to determine if the arbitration agreements apply to the entire collective action period or a different period. There is no evidence in the record regarding when the employees signed the arbitration agreements.

would have concluded that LAZ Parking failed to produce sufficient evidence to establish by a preponderance of the evidence that the arbitration agreements are valid and enforceable.

## Conclusion

For the above reasons, the defendant's motion is **DENIED.**

This is not a Recommended Ruling.  This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. R. 72.2. As such, it is an order of the Court unless reversed or modified by a district judge upon motion timely made.

SO ORDERED this 20th day of October, 2019 at Hartford, Connecticut.

_____/s/_____

Robert A. Richardson
United States Magistrate Judge